**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VALUEPART, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-3004 |
| ) | |
| RICHARD M. FARQUHAR, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Richard M. Farquhar ("Farquhar") moves to compel arbitration and stay these proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq*. For the reasons set forth below, the Court grants Farquhar's motion.

**BACKGROUND**

Plaintiff ValuePart, Inc. ("VPI") filed its amended complaint for injunctive relief and monetary damages against Farquhar on May 28, 2014. (R. 9, Am. Compl.) VPI is in the wholesale and retail business of distributing after-market undercarriage and repair parts in the construction industry. (*Id*. ¶ 7.) Farquhar was hired as the President of VPI in 2006, and also served on the VPI Board of Directors. (*Id*. ¶¶ 6, 10.) VPI alleges that beginning in 2007, Farquhar developed business interests with competitors that were adverse to VPI, interfered with VPI's contractual relationship with its largest supplier, and fraudulently induced VPI into entering into Farquhar's 2013 employment agreement. (*Id*. ¶¶ 1, 11, 125-131.) Based on its allegations, VPI asserts four claims against Farquhar: 1) breach of fiduciary duty; 2) breach of contract; 3) fraudulent inducement; and 4) tortious interference with contract. VPI terminated

1

Farquhar's employment in 2014 following the filing of this lawsuit. (R. 16, Opp'n to Mot. to Compel at 2.)

Farquhar's employment with VPI was governed by a series of three written agreements. The first two agreements, executed in 2006 and 2008, do not contain arbitration clauses. (R. 9-9, 2006 Agreement; R. 9-10, 2008 Agreement.) The most recent agreement, executed in May 2013, contains a mandatory arbitration clause. (R. 9-11, 2013 Agreement.) It states in relevant part:

> 12. Arbitration. If at any time during the term of this Agreement any dispute, difference, or disagreement shall arise upon or in respect of the Agreement, or the meaning and construction hereof, every such dispute, difference, and disagreement shall be referred to arbitration before a single arbiter in accordance with the then prevailing commercial arbitration rules, including the Emergency Interim Relief Procedures, of the American Arbitration Association. Judgment upon any award rendered by the arbitrator may be entered and a confirmation order sought in any court having jurisdiction thereof…Any arbitration arising hereunder shall be conducted in the Chicago, Illinois, area unless the parties mutually agree in writing to another location. To the extent, and only to the extent, that any controversy or claim arising out of or relating hereto is determined to be a non-arbitrable issue, claim or controversy under applicable law, the parties hereto agree to stay any litigation or suit relating to such non-arbitrable cause of action, controversy or claim until all other arbitrable controversies, claims and issues are resolved by binding arbitration in accordance with this Section. All parties hereto agree that any findings, judgments, or awards rendered by the arbitrator(s) shall be binding on all parties and may not be resubmitted or litigated in any litigation, suit or proceeding relating to non-arbitrable issues. Nothing herein shall be construed as preventing or depriving either party from seeking equitable relief in a court of competent jurisdiction to prevent continuing violations of the Agreement or to preserve the status quo. Any party to this Agreement may bring as a summary proceeding (including, without limitation, a plea in abatement or motion to stay further proceedings) an action in court to compel arbitration of any issues, claims and controversies in accordance with this Agreement.

(*Id*. at 9.) On June 11, 2014, Farquhar filed his motion to compel the arbitration of VPI's four claims based on this provision. (R. 13, Mot. to Compel.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") "'is a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Continental Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d

2

727, 730-31 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* Further, courts broadly interpret the FAA to govern the interpretation, enforcement, and validity of arbitration agreements in commercial contracts. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24. This policy does not override, however, "the principle that a court may submit to arbitration 'only those disputes … that the parties have agreed to submit.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2012) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. at 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

The FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that if an agreement is governed by a valid arbitration provision, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. "Thus, if one party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.,* 474 F.3d 966, 970 (7th Cir. 2007) (citing 9 U.S.C. §§ 3-4).

## ANALYSIS

In his motion, Farquhar requests that the Court stay VPI's action and compel arbitration. "'Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a

3

matter to be determined by the court on the basis of the contract entered into by the parties.'" *Zurich Am. Ins. Co. v. Watts Indus.,* 466 F.3d 577, 580-581 (7th Cir. 2006) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see, e.g., Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010) ("'[W]here the dispute at issue concerns contract formation, the dispute is generally for the courts to decide.'" (quoting *Granite Rock*, 561 U.S. at 296)). The issue of contract formation is governed by state law. *Jainga*, 615 F.3d at 742. "To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co.,* 466 F.3d at 580-581. "Once it is clear…that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

Here, VPI refuses to proceed to arbitration. It argues alternatively that (i) there is not a valid arbitration agreement between the parties, and (ii) if there is a valid arbitration agreement, its scope is too narrow to reach VPI's claims. The Court will address each of these arguments in turn.

**I.    Validity of Arbitration Agreement**

VPI objects to the validity of the arbitration clause in the 2013 Agreement on two bases. First, VPI claims that Farquhar fraudulently induced it to enter into the arbitration provision. In its Opposition, VPI argues that it alleges in the Amended Complaint that Farquhar's fraud was specific to the arbitration clause, and did not pertain to the 2013 Agreement as a whole. VPI contends that because of this, the Court (and not the arbitrator) should make the initial

4

determination of whether the arbitration provision is void for fraud. Second, VPI contends that the forum selection clause contained in the 2013 Agreement conflicts with the arbitration clause, and given the exclusive, mandatory language of the forum selection clause, the forum selection clause should govern rather than the arbitration provision. The Court disagrees with both of VPI's contentions.

### A. Claim that Arbitration Provision Was Fraudulently Induced

VPI first argues that Farquhar fraudulently induced it to enter into the arbitration provision contained in the 2013 Agreement. The initial question for the Court is whether VPI alleges that Farquhar fraudulently induced it to enter into the arbitration clause specifically, or whether VPI alleges that Farquhar fraudulently it to enter into the entire 2013 Agreement more generally. "[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally..." *Gore*, 666 F.3d at 1037 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). When a claim does not make allegations of fraud that are uniquely related to the arbitration clause, the arbitrator, not the district court, must resolve the claim. *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) (compelling arbitration where the plaintiff's allegations of fraud were not specific to the arbitration clause). "[A] court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud." *Sweet Dreams Unlimited v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 n. 4 (7th Cir. 1993).

In its Opposition, VPI asserts that Farquhar's alleged fraud was specific to the arbitration agreement, yet VPI alleges the opposite in Count III (titled "Fraudulent Inducement") of the Amended Complaint. There, VPI alleges that Farquhar fraudulently induced it to enter into the 2013 Agreement as a whole, and makes no mention of the arbitration agreement. (R. 9, Am. Compl. ¶¶ 125-131.) In Count III, VPI claims that it reasonably relied upon Farquhar's representations in negotiating the 2013 Agreement, "including offering Farquhar more favorable compensation and benefits than he previously received," and that VPI "continues to incur damages due to its reliance on Farquhar's representation as it otherwise would not have entered into the 2013 Agreement." (*Id*. ¶¶ 129, 131.) VPI cannot argue that it alleges fraud specific to the arbitration provision when it brings an entire count in its Amended Complaint alleging that Farquhar fraudulently induced it to enter into the 2013 Agreement as a whole.

The Court also finds unpersuasive VPI's argument that because the 2013 Agreement was essentially just a renewal of the 2008 Agreement with an added arbitration provision, the alleged fraud necessarily is specific to the arbitration provision. While it is true that the 2013 Agreement contains an arbitration clause where the 2008 Agreement does not, the 2013 Agreement is not simply a renewed 2008 Agreement with the addition of an arbitration clause. The 2013 Agreement contains other significant additions. The 2013 Agreement, for example, increases Farquhar's compensation by $50,000, raises his annual compensation as a member of the Board of Directors by $30,000, and sets a floor on his annual bonus of $100,000. *Compare* (R. 13-11, 2008 Agreement, at 3), *with* (R. 13-12, 2013 Agreement, at 3.) VPI itself even admits as much, stating that the addition of the arbitration provision "was the most significant substantive change, *aside from the compensation provision*, made to the 2013 Employment Agreement." (R. 16,

6

Opp'n to Mot. to Compel, at 7.) (emphasis added)  Accordingly, VPI's argument that the 2013 Agreement was little more than a renewed contract with an added arbitration provision falls flat.

Despite its assertions to the contrary in an effort to avoid arbitration, VPI claims in Count III that the entire 2013 Agreement was fraudulently induced – not just its arbitration provision. Therefore, the controlling law requires that the arbitrator decide this issue in the first instance.

**B.     Claim that Forum Selection Clause Precludes Arbitration**

Next, VPI argues that the agreement to arbitrate is not valid because it conflicts with a mandatory forum selection clause in the 2013 Agreement.  That clause states in pertinent part:

> Employee acknowledges and agrees that so long as he is employed by Company the federal and state courts sitting, and with jurisdiction over actions arising, in Lake and Cook Counties, Illinois shall have jurisdiction over all actions, suits and disputes by them and between them under this Agreement and that such courts shall constitute convenient and appropriate forums for the resolution of all such actions, suits or disputes.  So long as Employee is employed by Company, Employee and Company hereby designate Lake and/or Cook Counties, Illinois, the sole and exclusive venues for any action, suit or dispute instituted by either of them to enforce the terms of this Agreement and further designate the federal and state courts sitting in Lake and Cook Counties, Illinois the sole and exclusive tribunals for resolution of any such action, suit or dispute.  Accordingly, while employed by the Company, Employee hereby expressly waives and relinquishes any and all objections to the jurisdiction of the federal and state courts sitting in Lake and Cook Counties, Illinois over the parties or subject matter of any action, suit or dispute arising under this Agreement and further expressly waives and relinquishes any and all objections to the venue for any such action, suit or dispute being laid in Lake and/or Cook Counties, Illinois.

(R. 9-11, 2013 Agreement, at 9.)

VPI contends that since this provision is "exclusive and mandatory," its terms should prevail over the more "permissive" language of the arbitration clause.  In support, VPI relies almost exclusively on a Seventh Circuit case involving distributorship contracts that addressed two conflicting forum selection clauses.  *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006).  In *Muzumdar*, each plaintiff distributor signed one of two agreements with defendant Wellness International Network, both of which contained mandatory forum

7

selection clauses specifying that any disputes "shall" be brought in Dallas, Texas. *Id*. The rules and regulations that also governed the distributorship relationship, however, contained a provision that each distributor "irrevocably and unconditionally submitt[ed] themselves and their property to the *non-exclusive jurisdiction*" of an arbitration panel or court in Dallas, Texas. *Id*. (emphasis added). The plaintiffs in *Muzumdar* argued that the "non-exclusive" language in the second provision rendered both forum selection clauses permissive rather than mandatory. *Id*. at 761-762. The court was not persuaded, holding in part that the "non-exclusive jurisdiction" language could not undermine the strongly worded, mandatory forum selection clause. *Id*. at 762.

VPI's attempt to analogize the holding in *Muzumdar* to the facts of this case fails because *Muzumdar* addressed two conflicting forum selection clauses – it did not address the interplay between an arbitration provision and a forum selection clause.[1] Courts that have addressed the issue of conflicting forum selection and arbitration clauses contained in one agreement (or contained in multiple governing agreements or rules) have analyzed the issue as whether the forum selection clause waives the parties' right to arbitration.[2] *See Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 406-407 (3d Cir. 1987) (analyzing whether a forum selection clause contained in an underwriting agreement waived arbitration provided for in a NASD rule), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas*

---

[1] VPI's reasoning also fails because unlike the permissive "non-exclusive jurisdiction" language in the forum selection clause contained in the rules and regulations in *Muzumdar*, the language in the arbitration clause in the 2013 Agreement is mandatory. *Compare Muzumdar*, 438 F.3d at 761 (each distributor "irrevocably and unconditionally submit[ed] themselves and their property to the *non-exclusive jurisdiction*" of an arbitration panel or court), *with* (R. 9-11, 2013 Agreement, at 10) ("If at any time during the term of this Agreement any dispute, difference, or disagreement shall arise upon or in respect of the Agreement, or the meaning and construction hereof, *every such dispute, difference, and disagreement shall be referred to arbitration…*") (emphasis added)

[2] This is opposed to an agreement containing a forum selection clause that entirely supersedes an otherwise applicable earlier agreement or rule containing an arbitration provision, in which case courts have looked to state contract law to determine whether an agreement to arbitrate was formed at all. *See, e.g., Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1119 (11th Cir. 2014).

8

*Corp.*, 485 U.S. 271, 287, 109 S.Ct. 1113, 1142, 99 L.Ed.2d 296 (1988); *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F.Supp.2d 980, 984-989 (N.D. Ill. 2007) (Leinenweber, J.) (addressing whether a forum selection clause contained in a series of agreements waived an arbitration provision contained in an applicable regulation); *West Shore Pipe Line Co. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 791 F.Supp. 200, 203-204 (N.D. Ill. 1992) (Norgle, J.) (analyzing whether a service of suit clause contained in an arbitration policy waived an arbitration provision contained in the same policy); *Geldermann, Inc. v. Stathis*, 177 Ill. App. 3d 414, 416-420 (1st Dist. 1988) (deciding whether a forum selection clause contained in the parties' agreement waived arbitration provided for in a CBOE rule); *see also Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1119-1120 (11th Cir. 2014) (noting that the court in *Patten Sec. Corp.* applied a waiver analysis where the forum selection and arbitration clauses were both contained in valid, underlying agreements).

Here, the 2013 Agreement contains both a forum selection clause and an arbitration provision. The relevant inquiry is thus whether the forum selection clause waives Farquhar's right to arbitrate this dispute. "[W]aiver of arbitration is not lightly to be inferred." *ChampionsWorld,* 487 F.Supp.2d at 988 (quoting *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 641 (7th Cir. 1981)). "Courts will only find a waiver of arbitration rights when, 'under the totality of the circumstances, the defaulting party acted inconsistently with the arbitration right.'" *Id*. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. Further, "any waiver of a mandatory arbitration provision should be explicit in view of the federal policy favoring arbitration." *West Shore Pipe Line*, 791 F. Supp. at 204.

9

*ChampionsWorld*, a 2007 Northern District of Illinois case, addressed a similar factual situation to this case. *ChampionsWorld,* 487 F.Supp.2d at 980. In *ChampionsWorld*, both a set of regulations and a series of agreements governed the relationship between the parties. *Id*. at 984-985. The regulations contained an arbitration provision, and the agreements contained a forum selection clause, which stated:

> The parties hereby consent to the exclusive jurisdiction of the courts of the State of Illinois in connection with any action or proceeding arising out of or relating to the Agreement. In addition, it is expressly agreed that any judicial action or proceeding relating to this Agreement shall be brought in the Federal or State courts which cover Chicago, Illinois.

*Id*. at 985.

Despite the strong language of the forum selection clause, the court compelled arbitration, basing its decision in part on the fact that the forum selection clause did not specifically exclude or displace arbitration. *Id*. at 989. Other courts have also compelled arbitration in instances where both forum selection and arbitration clauses applied, but the forum selection clause did not contain language specifically excluding or prohibiting arbitration. *See Personal Sec. & Safety Systems,, Inc. v. Motorola*, 297 F.3d 388, 396 n. 11 (5th Cir. 2002) (noting that its holding was consistent with the principle that "a forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration."); *West Shore Pipe Line*, 791 F.Supp. at 204 (compelling arbitration and holding that "any waiver of a mandatory arbitration provision should be explicit in view of the federal policy favoring arbitration."); *Geldermann,* 177 Ill. App. 3d at 419-422 (applying federal law to compel arbitration despite a forum selection clause that stated that venue "shall lie exclusively with any State … [or] Federal Court of competent jurisdiction."). These holdings reflect the strong presumption against finding that the parties have waived their right to arbitration once they have agreed to arbitrate. A "forum

10

selection clause must be scrutinized carefully, and if doubts arise as to whether [the] dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability." *Patten Securities Corp.*, 819 F.2d at 407 (compelling arbitration in part because the forum selection clause did not reference arbitration and was "therefore at least ambiguous.").

The forum selection clause in the 2013 Agreement does not specifically exclude or prohibit arbitration. To the contrary, it does not even mention arbitration. *See* (R. 9-11, 2013 Agreement, at 8-9.) In light of the federal policy that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, and the requirement that waiver of a mandatory arbitration provision be explicit, under these circumstances the forum selection clause does not trump the provisions of the mandatory arbitration clause.[3]

## II.     Scope of Arbitration Provision

VPI further argues that even if the arbitration provision in the 2013 Agreement applies, its scope is too narrow to compel arbitration of any of the four claims that VPI asserts in the Amended Complaint. First, VPI argues that the language of the arbitration provision itself is too limited to compel arbitration of VPI's claims. Second, VPI contends that its breach of contract claim relates only to the 2006 and 2008 Agreements, and thus the arbitration provision in the 2013 Agreement does not apply to it. Neither of these arguments prevail.

### A.     Language of Arbitration Provision

VPI first argues that the language of the arbitration provision in the 2013 Agreement is too limited to cover any of its four claims. The relevant section of the arbitration clause states:

> "If at any time during the term of this Agreement any dispute, difference, or disagreement shall **arise upon or in respect of** the Agreement, or the meaning and construction hereof, every such dispute, difference, and disagreement shall be referred to arbitration…"

---

[3] Given the above analysis, the Court declines VPI's invitation to apply what VPI acknowledges is "a last resort" rule that any ambiguity must be construed against the drafter of a contract. (R. 16, Opp'n to Mot. to Compel, at 10.); *Abt v. Mazda American Credit*, 25 F.Supp.2d 860, 863 (N.D. Ill. 1998).

11

(R. 9-11, 2013 Agreement, at 10) (emphasis added).

VPI asserts that since this provision does not contain the phrase "relating to" the Court should construe it narrowly to only reach claims relating to the specific terms of the contract. VPI cites *Keeley* for this proposition, which held that "[w]hen the language of a particular arbitration clause is generic and contains the phrase 'arising out of this agreement' (or a variation thereof) but fails to also contain the phrase 'or relating to' (or a variation thereof), then arbitration should properly be limited to the specific terms of the contract or agreement containing the arbitration clause." *Keeley & Sons, Inc. v. Zurich Am. Ins. Co.*, 409 Ill. App. 3d 515, 522 (5th Dist. 2011).

VPI's argument ignores that the arbitration clause in the 2013 Agreement *does* contain a variation of "relating to" — the phrase "in respect of."[4] As Farquhar notes in his motion, "in respect of" has an almost identical meaning to "relating to." (R. 13, Mot. to Compel, at 6.) "In respect of" is defined as "as regards, as relates to; with reference to." *Oxford English Dictionary* (3d ed. 2010). In a similar context, a recent Northern District of Illinois case found the term "regarding" to have as broad of a meaning in an arbitration provision as "arising out of" or "relating to." *Davis v. Fenton*, __ F.Supp.2d ___, 2014 WL 544974 at *7 (N.D. Ill. Feb. 7, 2014) (Castillo, J.). Likewise, this Court finds the phrase "in respect of" in the arbitration provision contained in the 2013 Agreement to impart the same "extremely broad" reach as the phrases "arising out of" or "relating to."

### B. Count II of the Amended Complaint

VPI next argues that the scope of the arbitration provision is too narrow to cover its breach of contract claim because that claim only arises under the 2006 and 2008 Agreements.

---

[4] *Keeley* also does not preclude arbitration here because as discussed in Sections II.B and II.C below, VPI's allegations do "arise out of" the 2013 Agreement, as well as the 2006 and 2008 Agreements.

While it is true that VPI does not specifically reference the 2013 Agreement in its breach of contract claim, VPI still clearly alleges breaches of the 2013 Agreement in addition to the 2006 and 2008 Agreements. *See* (R. 9, Am. Compl. ¶¶ 114-124.) Count II references numerous actions that occurred after the termination of the 2006 and 2008 Agreements that only the 2013 Agreement could reach.

"To determine the scope of [an arbitration clause], the court must examine both the wording of the particular clause and the terms of the parties' contract." *Davis v. Fenton*, __ F.Supp.2d ___, 2014 WL 544974 at *7 (quoting *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.,* 119 Ill.App.3d 663, 670 (2d Dist. 1983)). The Seventh Circuit has held that the phrase "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore*, 666 F.3d at 1033 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir. 1993)). Arbitration provisions that contain "arising out of or relating to" language are "extremely broad and capable of an expansive reach," and create a "presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-910 (7th Cir. 1999).

The Seventh Circuit has held that when a breach of contract claim alleges breaches over a time period that is spanned by two separate agreements, only the second of which contains an arbitration clause, the claim will be subject to arbitration where the arbitration clause contains the broad "arising out of or relating to" language. *Gore*, 666 F.3d at 1033-35. In *Gore*, the plaintiff alleged a breach of contract claim based on the conduct of two wireless services companies — his original wireless services company, First Cellular, and Alltel, which acquired First Cellular during the term of his contract. *Id.* at 1030, 1034. Plaintiff's original agreement

with First Cellular did not contain an arbitration provision, but Plaintiff's revised terms and conditions with Alltel did. *Id*. at 1030-1031. In his breach of contract claim, Plaintiff alleged that both Alltel and First Cellular acted in breach of his agreement. *Id*. at 1034. The Seventh Circuit held that because the plaintiff had based his breach of contract claim on actions taken by both Alltel and First Cellular, before and after the onset of the arbitration clause, his claim was subject to arbitration. *Id*. at 1033-1035.

Here, VPI's Count II contains numerous allegations that could only be violations of the 2013 Agreement. Indeed, the 2008 Agreement terminated the 2006 Agreement as of June 1, 2008 (R. 9-10, 2008 Agreement, at 2.), the 2008 Agreement expired on May 31, 2013 (R. 9-10, 2008 Agreement, at 2.), and the 2013 Agreement came into effect on June 1, 2013. (R. 9-11, 2013 Agreement, at 2.) Thus, to the extent VPI alleges that Farquhar breached their contract after that date, those allegations must fall under the 2013 Agreement. In Count II, VPI alleges numerous instances of Farquhar's actions after June 1, 2013 in breach of their contract. First, VPI alleges several ongoing breaches:

> 122.  Farquhar's ongoing breaches of the 2008 Agreement constitute transgressions of a continuing nature for which VPI has no adequate remedy at law.
>
> 123.  Unless Farquhar is enjoined from further breaching his contractual duties, VPI will continue to suffer irreparable injury.

(R. 9, Am. Compl. ¶¶ 122-123.)

As discussed above, if any agreement governs the current relationship between the parties, it must be the 2013 Agreement. Second, VPI alleges that Farquhar "breached the 2008 Agreement by directly (and indirectly through his "team" of VPI employees) consulting, advising, and otherwise communicating with competitor ERMA in forming a distributorship in the United States to compete with VPI," (*Id*. ¶ 120.) and that "Farquhar breached the 2008 Agreement

14

by…soliciting Ace Track Co., Ltd. to breach its Exclusive Dealership Agreement." (*Id*. ¶ 121.) A review of the previous allegations in the Amended Complaint, which VPI incorporates by reference into Count II, reveals that the allegation in paragraph 120 is based in part on the allegation that Farquhar met with representatives from ERMA at the National Expo for undercarriage parts in December 2013. (*Id*. ¶ 49.) Similarly, the allegation in paragraph 121 is based in part on the earlier allegation that Farquhar solicited Ace Track Co., Ltd. to breach its Exclusive Dealership Agreement by employing Farquhar's son through at least October 2013. (*Id*. ¶¶ 57-58.)

VPI cannot avoid arbitration by attempting to plead its claim around the 2013 Agreement. "Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause. Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." *Gore,* 666 F.3d at 1036 (quoting *In re Oil Spill by the 'Amoco Cadiz' Off the Coast of France March 16, 1978,* 659 F.2d 789, 794 (7th Cir. 1981). Despite VPI's efforts to frame its breach of contract claim as falling solely under the 2006 and 2008 Agreements, VPI's allegations demonstrate that it has based its claim on the actions of Farquhar both before and after the onset of the broad arbitration provision contained in the 2013 Agreement.

Finally, the Court rejects VPI's argument that *Rosenblum v. Travelbyus.com*, 299 F.3d 657 (7th Cir. 2002), applies. In *Rosenblum*, there were two separate agreements at issue: i) an acquisition agreement for the sale of a company; and ii) an employment agreement between the former owner of the company and the acquiring company that governed the owner's continued employment. *Id*. at 659-660. The employment agreement contained an arbitration provision, while the acquisition agreement did not. *Id*. at 659-660. The Court held that because the action

related solely to the acquisition agreement, and had "nothing to do" with the owner's employment, the arbitration provision in the employment agreement did not apply. *Id*. at 664. Here, the agreements at issue all govern Farquhar's employment with VPI — they do not apply to separate, independent subject matter. Further, since VPI alleges that Farquhar breached his employment agreement both before and after the effective date of the 2013 Agreement, the agreement with the arbitration provision here is relevant to the dispute at issue. Accordingly, this Court finds that Count II of the Amended Complaint is subject to arbitration.[5]

### C. Counts I, III, and IV of the Amended Complaint

Other than its argument discussed in Section II.A above, VPI does not object to the language of the arbitration provision in the 2013 Agreement reaching Counts I, III, and IV of the Amended Complaint, and the Court has no difficulty finding that those claims are subject to arbitration as well. As discussed above, arbitration provisions that contain the type of broad language found in the 2013 Agreement are "extremely broad and capable of an expansive reach," and create a "presumption of arbitrability." *Kiefer*, 174 F.3d at 909-910; *see Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 640 (7th Cir. 2002) (noting that courts have held "arising out of" or "relating to" language to "include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance."). "[A] court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer*, 174 F.3d at 909 (quoting *United*

---

[5] Given the applicability of *Gore* and VPI's allegations in the Amended Complaint that arise after the effective date of the 2013 Agreement, the Court does not address Farquhar's argument that the arbitration provision in the 2013 Agreement should apply to the 2006 and 2008 Agreements based on *A.E. Staley Mf'g Co. v. Robertson*, 200 Ill.App.3d 725, 730-31 (1st Dist. 1990).

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

In VPI's Amended Complaint, Count I alleges that Farquhar breached his fiduciary duties to VPI as its "President, officer, and employee…" (R. 9, Am. Compl. ¶¶ 110-113.); Count III alleges that Farquhar fraudulently induced VPI to enter into the 2013 Agreement (*Id.* ¶¶ 125-131.); and Count IV alleges that Farquhar tortiously interfered with VPI's contractual relationship with Ace Track Co., Ltd. (*Id.* ¶¶ 132-139.) These claims all clearly "arise upon or in respect of" the 2013 Agreement governing the employment relationship between Farquhar and VPI, especially given how expansively courts have interpreted similarly broad language in other arbitration provisions.

## III. This Case is Stayed Pending Arbitration

As a final matter, VPI does not dispute in its Opposition that the Court should stay this action if the Court grants Farquhar's motion to compel arbitration. Section 3 of the FAA provides:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…"

9 U.S.C. § 3. "For arbitrable issues, a § 3 stay is mandatory." *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable...")) (emphasis added). Since a stay is the proper course of action where the Court compels arbitration of all of the claims before it, the Court stays this action pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants Farquhar's motion to compel arbitration in accordance with the terms of the arbitration provision contained in the parties' 2013 Agreement. In accordance with § 3 of the FAA, the Court stays the litigation pending arbitration.

DATED: September 29, 2014	ENTERED

*(signature)*
AMY J. ST. EVE
U.S. District Court Judge